WENDELL & EVANS CO. v. KENNICOTT CO.

(Circuit Court of Appeals, Second Circuit. November 10, 1914.)

No. 25.

SALES (§ 279*)—WARRANTY BY MANUFACTURER OF FITNESS FOR PURPOSE INTENDED—CONSTRUCTION.

Plaintiff contracted to furnish and install for defendant at its laundry a water-softening apparatus; the understanding of the parties being that it was to be used for treating water from a well which had been sunk by defendant. A sample of the water was furnished to and analyzed by plaintiff, and its hardness found to be what is technically called 35 degrees. Plaintiff then wrote into the contract a guaranty that the water, as per its analysis, "when properly treated in this softener, will be satisfactory for laundry purposes." Water taken from the well some months afterward, on analysis, showed a hardness of 79 degrees, and, while the apparatus would soften it, so much chemical was required as to render it unsatisfactory for laundry purposes. Held, that the warranty applied only to water of substantially the same degree of hardness as that previously analyzed, and not to any water which might come from the same well, and that the failure of the apparatus to satisfactorily soften water of 79 degrees of hardness was not a breach thereof.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 783–792; Dec. Dig. § 279.*]

In Error to the District Court of the United States for the Southern District of New York.

This cause comes here upon writ of error to review a judgment of the District Court, Southern District of New York, in favor of defendant in error who was plaintiff below. Verdict was directed by the court in favor of plaintiff and dismissing defendant's counterclaims.

H. Aaron, of New York City, for plaintiff in error.

C. W. Atwater, of New York City, for defendant in error.

Before LACOMBE, COXE, and ROGERS, Circuit Judges.

LACOMBE, Circuit Judge. The plaintiff is a corporation engaged in the business of manufacturing and selling machines for purifying and softening water. Defendant is a corporation engaged in the laundry business in the city of Brooklyn. Prior to the making of the contract sued upon it had been using water supplied by the city of Brooklyn, which, although originally suitable, had become very hard, because of certain new sources from which it was being taken. The result was that it increased the laundry's soap cost twice as much as it had been. Defendant therefore drove a well on its premises, and when water was obtainable therefrom it entered into the contract sued upon; such contract being evidenced by two written papers, a proposal (May 20, 1910) and an acceptance (June 4, 1910). Under the contract plaintiff agreed to furnish and install its patented Type K water-softening apparatus, of an hourly softening capacity of 8,000 gallons. As there is no dispute about the capacity of the apparatus furnished—so far as number of gallons is concerned—nor as to the apparatus supplied and the price, it will be necessary to quote from the contract only certain guaranties incorporated therein. The proposal, which by acceptance became a contract, is on plaintiff's usual printed form. The guaranty included in the form reads as follows:

"We guarantee that the softener, when operated in accordance with our instructions (given without charge), will *soften water* so that it will not give rise to scale in boilers; that the calcium and magnesium salts will be reduced to five (5) grains per U. S. gallon or less; and that, where the hardness of the raw water exceeds ten grains per gallon, the soap required to produce a permanent lather will be over 50 per cent. less in the treated water than in the raw water, the percentage of reduction increasing as the hardness of the raw water increases."

Defendant, before entering into the contract, asked for a further guaranty, specifically referring to the business in which it was engaged, and before execution the following written clause was inserted:

"It is further guaranteed that the water per analysis #5680, made by us, when treated properly in this softener, will be satisfactory for laundry purposes. If it cannot be made so satisfactory, we agree to remove same without expense to you."

Prior to making the contract defendant had drawn samples from its well, and had sent one to plaintiff and also to two other concerns which were trying to get it to install their apparatus. The sample sent to plaintiff was analyzed by its chemist, and such analysis is the 5680 referred to in the above quotation.

The apparatus apparently was installed with the understanding by both sides that it was intended to operate on the water of the driven well. It contains a clause, presumably written in (the original document is not before us), which states:

"This contract is based upon *your well* supplying 8,000 gallons of water an hour. In the event that this is not obtained, it shall be optional with you

(the laundry company) to cancel this contract within three weeks from date of contract."

There is nothing in the record to indicate that the apparatus and process could not deal satisfactorily with the water furnished by the city; indeed, before the apparatus was fully installed the city ceased supplying water from the particular sources of supply which had made it hard. The trouble arose wholly from the driven-well water. The water originally flowing from the well, from which sample No. 5680 was taken, showed that its hardness was what is technically called 35 degrees. It took upwards of three months to install the apparatus, and thereafter it was repeatedly tested, operating with water from the well. The result of these tests was that, although it softened the water, so large an amount of chemicals had to be used in the process that the resulting water was not satisfactory for laundry purposes, because it interfered with the bluing process, which is very necessary in laundry work.

The contract was closed in June, 1910, the apparatus installed in September, 1910, and for some time afterwards water from the well was treated with the result above indicated. Payments on account were made from time to time. A sample of water from the well was taken in January, 1911. There was testimony showing that an analysis of this sample showed that the character of the water coming from the well had materially changed since the sample was taken prior to the making of the contract. Its hardness has increased to 79 degrees. This testimony is uncontradicted.

On March 17, 1911, plaintiff wrote to defendant as follows:

"Your kind attention is called to balance due for the sale of water softener to you. We have complied with all of the guaranties in our contract, and trust you will favor us by sending us New York or Chicago exchange in payment."

To which defendant replied on March 20th as follows:

"In reply to yours of the 17th inst., I beg to say, before making final settlement, I believe there are a few small matters to be adjusted. First, the tank never was properly painted; second, we were put to an unnecessary expense for about $200 worth of chemicals wasted by an incompetent man you sent first. Kindly have some one call in reference to said adjustment."

The fundamental question in the case is what construction should be given to the inserted written clause, above quoted, when read in connection with the ordinary printed guaranty clause in the contract.

The testimony does not indicate that the apparatus failed to soften the water; the trouble was that, in softening it, so much lime had to be used that the softened water acquired a degree of alkalinity which interfered with bluing. The only guaranty that the product of plaintiff's process should be satisfactory for laundry purposes is found in the written clause. Defendant contends that it should be construed as a guaranty that the water coming out of that well should be treated so as to produce results satisfactory for laundry purposes, no matter what the character of the raw water might be. We concur, however, with the trial judge in the conclusion that the guaranty covers only water from that well (or elsewhere) which may be substantially of the

same degree of hardness as the sample analyzed before the contract was made. It would be a very strained construction to hold that the guaranty covered water of more than double the degree of hardness, merely because it came out of the same well. The witness Ellis, an expert chemist, testified that the apparatus installed would soften water substantially like sample 5680 satisfactorily for laundry purposes, and there was no evidence to contradict him.

It seems unnecessary to discuss the other points in the case. We find the argument in their support unpersuasive.

Judgment affirmed.